Good, thank you your honor. Nice to see you. Your honors, if you may please the court. I think the briefs have done a good job of setting out the background information, but just by a very brief recitation. We're here. There was a traffic stop where two Omaha police officers pulled over a vehicle being driven by Miss Tabitha Manning. I think the briefs lay out there was some issues in regards to that traffic stop. I think we've addressed those issues very well in the brief and I don't want to lose my precious time this morning going over that unless I do have extra time on rebuttal. I think a good review, there's a cruiser video that is part of the joint appendix. That would be at page 252 for lack of better words for a DVD. The video shows a very lackadaisical stop for lack of better words. The officers have a good conversation with Miss Manning, inform her that there are warrants out for her arrest, which she agrees. And they inform her that they have to arrest her and take her to the DCC, the Douglas County Correctional Center. They do that. The video shows Miss Manning in the backseat of the cruiser. We pull into the sally port of the Douglas County Correctional Center where the video stops. Now, this is where we get into the issues. Upon removing Miss Manning from the vehicle, one of the officers, Officer Delazine, sees a small bag of drugs to which we later have referred to as a bag of methamphetamines. One of the exhibits is a photograph that's contained within the joint appendix of the deposition of Officer Von Cotton, pages 76 through 153. Officer Cotton sees the bag, asks Miss Manning about it, she says it's not hers, and that's where we are today. Miss Manning's assertion is that she didn't put the drugs there, therefore the officers put the drugs there. Now, what we can all agree on is that the drugs were not in the vehicle when Miss Manning was placed in the vehicle. Officer Cotton, Officer Delazine, and Tabitha Manning all agreed the drugs were not there when she got in. They all agreed that the drugs were there when she got out. So we have her assertion that she didn't do it, therefore the two officers did it. We move for summary judgment and finding of qualified immunity for the officers, which the lower court denied. It's denial- Let me ask it. Often, I've been critical a couple times of the district court not making individual findings, and there's not much here on it. But looking at it, to me, it seems like it's a credibility issue that really cannot be decided until you have a jury, or probably have a jury trial, or some finder of fact, because she says, I didn't do it. They say, well, we didn't do it. Why is that just not a credibility issue that has to go to trial? Well, your honor, I think that what makes this different from a straight credibility issue is, this isn't in a criminal context where we're looking at the he said, she said. Her denials in this case are her allegations. And the case law is clear, you can't just make these allegations, throw it up in the air, see what sticks, and hope for the best. And that's what we've argued. And as you correctly pointed out, the district court spent one paragraph in looking at this. And in that one paragraph, they made absolutely zero individual analysis on either of these two officers. Instead, the district court chose to look at a hypothetical officer who plants drugs. And because there's a hypothetical officer that plants drugs that doesn't get qualified immunity, that now applies to Officer Cotton and Officer Delazine, who the district court did not once mention by name in its decision. And that's not the law. Now, I'll shamelessly plug that the defense counsel in this case was the same as Roberts, and that's why we spent a lot of time with the Roberts case here. And this appellate court told the district court in the Roberts case, you have to provide us, you, with what is it that they did that denies them that qualified immunity? And the district court didn't do that in this case. And Ms. Manning says, it's not a big deal. The district court did the right thing by just glossing over that. That's not the law. I agree the district court didn't do as we've indicated in the past. But I guess my point is, what difference does it make? Because can we look at the record and say, make those own findings ourselves to say, look, this, getting back to my question on credibility, if the district court had done that, or if we sent it back and the district court did it, the district court would just say, plaintiff says this, defendants say that, it's a credibility issue, it's got to go to trial. And, your honor, I will respectfully disagree that. I think that we are stuck with, these are her allegations. And for this qualified immunity, the plaintiff must produce evidence to show that there's an issue of fact. And if her allegations can't stand alone in any other context, as a 1983 case, for example, then they will not stand alone here. If we would require more from her in an excess force case, for example, meaning she has to provide us with evidence, more than just I didn't do it, then that same standard should apply here. Well, this is Ms. Manning's lawsuit to prove. Correct. Not the city's, isn't that correct? Well, that is correct, your honor. And I would argue that that's what we've been saying here. And what we've tried to impart upon the district court is, she has to meet these burdens and she hasn't met any of them. And the district court glossed over it and said, she says there's something there and that's good enough. And that's not the right answer. And that's certainly not what this court has said in other cases. In the Roberts case, for example, when you look at qualified immunity, that puts that burden on her. Qualified immunity, as the court said in Foy versus Holston, 94 F3rd 1528, qualified immunity is the rule. Only in exceptional cases will the government actors have no shield against them. And so when we gloss over and don't give that individual analysis in this case, we are denying them that qualified immunity. They should have in this case. I think what Judge Battalion was saying was, look, she says, she didn't put it there, so they must have put it there, and uses the hypothetical. I think what he's saying is, well, look, what else can she prove? I mean, if she didn't put it there, her whole case is, I didn't put it there, somebody else had to, the only other people around were the officers. What more, in a case like this, what more could a plaintiff come up with? Well, and your honor, again, she has to show specific facts. The fact is, she says, I didn't do it. I mean, what more could she put? Well, and the reality is, this case doesn't change from today to trial. There's nothing more. We have three depositions, we have a cruiser cam, we have her 911 call, where I would point out, in the 911 call, she starts off saying, these officers, they made a mistake. And then in the course of that 911 call, she changes and says, they must have planted it there. So we hear in her own phone call, where she's having these, trying to make something make sense. But you're correct, there is nothing else. But she's gotta prove, this is her case to prove, these officers planted it there. There is nothing here that will support that. There's nothing in the evidence that supports any of those assertions that they planted the evidence. Unless a jury believes her. Well, your honor, I would argue that we shouldn't get there. That could be a possible outcome, could it not? That could be, but we shouldn't get there. And so isn't that enough? That the district court was to view this evidence in the light most favorable to the plaintiff, when talking about qualified immunity. So, she says she didn't do it, a jury could believe her, and disbelieve the officers. Well, except, your honor, except for the fact that she still has to point to something that shows. Here's another part of the problem. We don't know who did anything in this case, according to Ms. Manning. She's throwing it out there in the air, hoping that someone will figure it out for her. Because her assertion is, one of the officers planted these drugs in the car. The other one either knew or should have known about it, and then his continuance in my prosecution was a violation of my rights. I don't know which one is which, somebody else will figure that out, that's not for me to decide. Her allegation that she didn't do it, doesn't establish that the officers did it. And only if the officers did it, does she prove that she had a constitutional violation of what was a Fourth Amendment violation that she alleged. Isn't that the issue here? And so, the officers said you haven't proven that we've violated your constitutional, if somebody else did it, they're not there, or if it was left in the car by somebody else, or whatever. We're just up in the air at this point in time, and they're just asking for qualified immunity, and that is that they violated a constitutional right. And it was a constitutional right that they knew of, right? Isn't that the issue here? Correct. Okay. If I understood your question. And short of that, everybody goes on their way, right? If I understood the question, then, instead of me trying to make sense, can I ask you to just clarify it? Well, they're alleging that they have qualified immunity because she didn't establish that they committed a constitutional violation that they knew of. And so, she just can't say, I didn't do it, and prove that, can she? No, and that's what brings us back to this. As the court pointed out in the Roberts case, in that case, this court looked at the individual actions of the officers, who four officers were. And her response to that was, well, one of them did it, and if the other one didn't, then he is entitled to qualified immunity at least. And so, that has to be established for either of them to have committed a constitutional violation, right? My understanding of what the issue is here. Correct, and I'll quickly point out that that's what we were asking. And I think that's what this court has told the district court that it needs to do when it provides the individual analysis. Because if one of those officers did plant the drugs, I always pick on Officer Delazine, because he's the one that found the drugs. If he's the one that found it, and Officer Cotton, who was on the other side of the car, wasn't near the drugs, only reached in to unbuckle her. If he didn't know anything about it, he's, if you look at the facts, he's entitled to qualified immunity. Now, Ms. Manning says it's totally possible that he threw the drugs over her, behind her somehow, and gets them to the other side of her body. Officer Delazine opens the door, finds the drugs. If he didn't know anything about that, he's entitled to qualified immunity. Is that a question of fact that a jury gets to decide? No, Your Honor, because that is nothing more than speculation. And when I asked Ms. Manning . . . Well, are you asking that it go back for the individualized analysis? I mean, to me, there's credibility issues here, but you're saying that there's enough there that if the district court had done an individualized analysis, it would have pitched one of the officers? At a bare minimum, yes, Your Honor. And similar, again, to the Roberts case, this court did the individualized analysis and kicked three of the officers in that case. Now, I think that's what we have to do in this case. You look at the individual facts and you say, there's nothing there for this officer, and we move forward. Thank you. If there's no more questions, I'd like to reserve the rest of my time. Certainly. Morning, Mr. O'Brien. Morning. You may proceed. Thank you. William O'Brien on behalf of Tabitha Manning. We're here on appeal by the defendants that the challenges, the district court's denial of their motion for summary judgment on qualified immunity grounds. Now, the plaintiff alleged in her amended complaint that one or both of the officers were aware that the evidence had been planted by the time Officer Delazine found it. The judge says it has ruled that there is no conspiracy in that. You haven't appealed that, have you? That's correct. So, if there was no conspiracy, then it had to be one or the other. And if it was one and the other one's off the hook, isn't that right? No, I don't think that is, Your Honor. I think- Without a conspiracy, I mean, unless they conspired together to do this, how, when you say no, what do you base that on? Well, I don't . . . I think it's possible for both of the officers to have participated in it, in the fabrication, without coming to a meeting of the minds necessary for . . . I mean, they get both physically thrown it and so forth. What did the failure to prove a conspiracy mean that the district judge said? What was he saying there? It's my understanding that you boiled it down, it was one or the other of them. One or the other of them, well, first of all, we alleged and the district court denied summary judgment for the claim that, at the very least, both of the officers knew that the meth had been planted by the time Tabitha Manning was booked into jail. And either they both knew when it was planted or one or the other knew. So at the bare minimum, the allegation that the court denied summary judgment on, which was made by Ms. Manning. They conspired one with the other to plant this in there so that they could pin this on her, is that? We allege that, but the court rejected the conspiracy count. And you didn't appeal that? We didn't appeal that. Okay, so we kicked that out, right? Okay. You're saying that maybe one of them didn't conspire with them to do it, but observed or learned that the other one had done it and went ahead and booked her anyway. Right, and because that's possible, we had no way to show that there was a meeting of the mind. Is that a constitutional violation, if that were the factual predicate? If they both knew about it and allowed the prosecution, yes. If they both knew that Tabitha Manning was being criminally prosecuted based on fabricated evidence, then they both would be guilty of a constitutional violation. Let's do the individualized assessment that the district court did not do. Let's talk about these two officers. You explain what did each of the officers do individually that would give rise to the potential of a constitutional violation. Okay. There is a, first of all, the factual allegation, one of them is disjunctive, it says either this happened or that happened. But you want me to leave those out? Well, I think you have to do an individualized. I'm looking for the names of the officers that I don't remember. Cotton and Delezine? Yes. Okay, let's take Cotton. What is your claim against Cotton individually? The claim against Cotton individually is that he either put the evidence there himself or was in on it, or he at the very least knew by the time she was booked into jail, after watching the video, that she wasn't guilty of possession of meth. And therefore, by supporting this prosecution, is guilty of the constitution. Let's back up to what were the circumstances, what were they physically doing that he, Officer Cotton, could have done it? Was he in, I can't remember which one was in the back seat, which one unbuckled her. It shows on the video, it's a little bit misleading on the video because it's a mirror image. So she's in the opposite seat from the one she's sitting in, in any case. But Officer Delazine comes around to open the door, while Officer Cotton gets, opens the door from the other side in the back seat to unbuckle her belt. From the other side of the car? The other side of the car, yes. And- Delazine ever get, reach into the car, or? He opens the door, and then as he's getting around, he sees the meth there.  And then he holds onto it. So he's not, he has not been in the car. Well, they both, this is the end of the shift, and they have not had anyone else back there. They both were, they both asked, they testified that- Let me ask it this way. How do you, how do you argue that Delazine planted the meth? If he's on the outside and just opening the door? Well, no one else, he could have just picked up, he could have had it in his pocket and just picked it up and said, I found this, I mean, for all we know. Or, Officer Cotton could have reached and thrown it over there, in the same spot. But, I mean, it may seem- And faced with the proof by, beyond a reasonable doubt, a jury could have followed, he could have, he could have done it. And if you're burdened with proof beyond a reasonable doubt, that's enough to let the jury speculate on that? Well, that's what Tabitha Manning was facing. I mean, the same argument was, look, they checked before she was in there, they found the drugs in there. It couldn't have got in there any other way. So that's enough, so she was being prosecuted. And when she was being prosecuted for possession before the prosecutor dismissed the case. What evidence, I mean, what allegation did you make that it couldn't have gotten in there any other way? The fact that the officers testified that they had checked the backseat beforehand to make sure there was no contraband in it. They said that, Officer Delazine said that at the preliminary hearing in the criminal case. That they checked, it was checked beforehand, and that's how people get prosecuted. And that there was no meth in there. Yeah, there was nothing in there. And that's, I was going to say, that's how, it's good enough to prosecute someone in a criminal case, it's the same basic reasoning. It had to get in there some way. Our reasoning is, yes, it wasn't in there when Tabitha Manning was arrested. And therefore, it had to be her or the police who put it there. Was she handcuffed in the back of the car? Yes, she was. So is one of your arguments that she could not have placed it there because she was handcuffed and she couldn't have reached, I don't know, wherever she might have had the, have hidden some meth? Our argument is that if you look at the video, it doesn't appear she's getting rid of the meth. It would have been difficult. If you look at the circumstances before she was put in the car, she was out talking. Her children were brought out from the babysitter. She's out there talking to them for a long time. They bring up the fact that she has an outstanding warrant for unpaid fines, so she knows she's getting arrested. All this time elapses. And so, the argument to the best explanation would be, one of them, either the police put this in the vehicle or she put it in there. If she was going to put it in there, she would have known she was going to be arrested for all that time. She could have thrown it in her car before she was stopped. She could have thrown it on the ground. And then, so one reason is the video, just it doesn't appear that she's, and that's what the judge cited in the district court. The other is the fact that it makes more sense if she was going to put, if she had meth and she was going to get rid of it, that she wouldn't wait until she was in the car with her hands cuffed behind her back to throw it in a police car. And a third reason is that they first threatened to fingerprint the bag, trying to get it to admit it, or they could DNA test it, or they could drug test her. And she said, no, yes, I want you to do that, and then they refused to do it. So if it was her bag of meth, she wouldn't have wanted them to fingerprint it, and they could have fingerprinted it. And if her fingerprints appeared on the bag, that would have resolved the matter, but they didn't do that. They threatened to do it, but they didn't do it. Those make it more likely, if you start out with the assumption either the police did it or she did it, and then this evidence shows it's more likely that she did it. Then, therefore, it's likely that the police put the meth in the car. And at this point, they're not challenging, they don't really spend any time challenging qualified immunity, whether there's a clearly established constitutional standard that you can't fabricate evidence. They're not challenging that. What they're saying, I think, is more that the district court didn't make, they were using the Quotas Court's admonition to district courts to articulate individual assessments of the constitutional violations. But they say that there was no factual finding, and I don't think that's true. And I think by the district court, by ruling that there was, by denying their motion for summary judgment, the court is saying that there's enough support for the factual allegation in the amended complaint that either one or both were aware of the drugs when they were put in the car, and both were aware by the time she was booked into jail. Well, I think it was robbers, but one of our cases say that the district courts on these should be making findings of facts and conclusions of law. I don't see any findings of fact here, it's just, and that's why we're struggling with this today. But there's no other way to, I agree, it could have been stated expressly, this court finds that there's sufficient evidence that the officers planted the meth in the car. But what it does say, by denying their motion for summary judgment, that is a factual allegation that the complaint is based on. To get over this precise hurdle that we're talking about here, you allege that the two officers conspired, which they both had their hand in on doing this. And the district court ruled that based upon what you had presented, there was no such conspiracy, and you didn't appeal that. You've waived that issue in coming before us at this time, right? Correct, because we didn't have any specific evidence. Our only evidence for a conspiracy was that if they both knew about it, it stands to reason that there would have been some agreement. We didn't have any specific evidence of how the agreement was reached, and it's possible the allegation could be true that they both knew about this and supported a false prosecution, even if they never conspired. Well, if it went to trial, the trial judge can't instruct a jury without evidence in support of the instruction. You've heard this evidence, and I instruct you that if you believe that they were both involved, but the trial judge said no, that there isn't that evidence, and you've said, I agree, so. He didn't say that there wasn't a conspiracy. He said that we didn't have any evidence of it at this point. Okay, and a trial judge needs evidence to instruct a jury, right? Correct. On an issue, okay. Correct, my point was just that I don't think a conspiracy is strictly necessary to assume it was a conspiracy in order for the, okay. Okay. Are there any more questions? Thank you. Okay, thank you, Mr. O'Brien. Mr. Acosta-Tejo, you have a little over a minute. Your Honor, quickly, I don't want to get lost in the weeds too much, but I look at the statement that the lower court made when it was talking about the conspiracy, and it says the plaintiff has no evidence other than a package of methamphetamine, and what we're talking about, and this is why the individual analysis is so important, is we still have a conspiracy claim. It's just under a different name. One of them did it. Maybe they both did it. Maybe they both did different things, but they did it together. That's really the claim. That's a conspiracy under a different name, and so that's why that individual analysis is important, and it was the Roberts case, Your Honor. Where the court said it requires the lower court to create a careful order with findings of fact and conclusions that allow the appellate court to determine and properly evaluate the individualized legal analysis. That's what Officer Cotton and Officer Delazine have been denied in this case, and what we are asking this court to do with that, unless there's any other questions. Are you asking this court to apply an individual analysis, or to send it back for the district court to do that? Well, Your Honor, I think this court did a great job in the Roberts case by doing it, so I'm not going to tell you not to do it, but in any event, the individual analysis needs to be done. Okay. Thank you very much. Thank you for your arguments. We will . . . We'll get it done before the officers have to go to a trial. Yes, Your Honor. Because they don't want to go to a trial. Yes, Your Honor. The Supreme Court has made it pretty clear the officers are entitled to this analysis, so . . . anyway, we will be back in touch as soon as we have time to get to it. Thank you.